# Third District Court of Appeal
## State of Florida

Opinion filed September 17, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1601
Lower Tribunal No. F24-4586
_____

**Alain Antonio Ramirez,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Laura Anne Stuzin, Judge.

Carlos J. Martinez, Public Defender, and Amy Weber, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Katryna Santa Cruz, Assistant Attorney General, for appellee.

Before FERNANDEZ, LOGUE and LINDSEY, JJ.

LOGUE, J.

Alain Antonio Ramirez appeals his sentences for burglary of an

unoccupied conveyance, attempted burglary of an unoccupied conveyance, and one count of petit theft. Because the trial court erred by relying on Ramirez's arrests and dismissed charges when imposing the sentences, we reverse his sentences and remand for resentencing before a different judge.

## Background

Ramirez was tried and convicted of burglary of an unoccupied conveyance (a motor vehicle) on February 24, 2024, a third degree felony; attempted burglary of an unoccupied conveyance on February 25, 2024, a third degree felony; and petit theft of a boat water pump on February 25, 2024, a second degree misdemeanor.

The day prior to Ramirez's trial, the trial court stated it wanted to colloquy Ramirez about the State's plea that he rejected—a withhold of adjudication and two years of probation with early termination at one year. Before doing so, the trial court requested that the State set forth the charges against Ramirez and proffer the evidence it expected to prove during trial to allow Ramirez to know what he was "up against so" that "later on, [he does not] tell me, 'I didn't know that.'" The prosecutor proffered the evidence and then stated that the bottom guidelines sentence was non-state prison and

2

the top was fifteen years in state prison.[1] Thereafter, the trial court asked the prosecutor if Ramirez was a convicted felon, and the prosecutor stated that Ramirez had no prior convictions.

The trial court requested that the prosecutor play in court the security camera footage of the perpetrator apparently engaging in the charged actions. The court stated that if Ramirez was later convicted and the trial court sentenced him to state prison, he could not say that he did not have the opportunity to see the footage that the jury saw. Prior to viewing the footage, the trial court read the charges against Ramirez, and Ramirez stated that he understood the charges. The trial court then questioned Ramirez as follows:

> THE COURT: Okay. The State has made you an offer of withhold of adjudication which means you're not a convicted felon as part of their plea offer. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand if you are convicted by a jury, I'm unlikely to give you a withhold of adjudication, and I would – I am unlikely to give you a withhold of adjudication? I can't say that I wouldn't for sure.
>
> THE DEFENDANT: What does that mean?

---

[1] The guidelines sentencing information provided by the trial court was correct at that time because it was based on the inclusion of a felony charge the State subsequently dismissed and an additional count the jury found Ramirez not guilty of—petit theft of a fuse box on February 24, 2024.

3

THE COURT: That means if a jury convicts you of all these crimes, you are likely to be adjudicated a felon, and then you would be a three-time convicted felon because there's three felony counts, if a jury convicts you of all those charges.

The State is offering you a gift which is to withhold the adjudication and not convict you. And I want to make sure you understand that you are rejecting the gift. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. So I'll continue the colloquy. This is a conversation with you. I don't want to convince you to take a plea or not take a plea. But I want to make sure you and I are square, and look each other in the face.

And If you are convicted, and if I do have to sentence you to state prison, you can't tell me you didn't know the consequences because I'm making sure right now you do know the consequences.

Here are the following things that could happen to you. One, you may be found not guilty by a jury. The jury doesn't think it's you; you didn't do it. You're successful. You walk out the door. Your case is closed. Not guilty.

Option number two. You're found guilty by a jury of the three felonies and two misdemeanors. I will have to sentence you.

I can sentence you up to 15 years state prison. I don't have to do that, but I could. I have the discretion to do so. I could also sentence you to local county jail 364. I could also sentence you to probation, or I could sentence you to house arrest, community control, or a combination of all of the above. Do you understand that, that I have the full discretion to do that?

THE DEFENDANT: Perfect.

4

. . . .

THE DEFENDANT: Excuse me. One question. What offer am I rejecting here?

THE COURT: The State has offered you a withhold of adjudication.

THE DEFENDANT: What is that?

THE COURT: No conviction. No felony conviction. The Court will withhold the adjudication, which means you're not a convicted felon, which means you're allowed to own or possess a firearm, which means you're allowed to vote. Okay.

Ramirez confirmed he was rejecting the plea.

The trial court then viewed the footage and during the viewing, the trial court explained what it was seeing. Thereafter, Ramirez was given an opportunity to speak with his attorney. The trial court confirmed that Ramirez was still rejecting the State's plea offer and informed Ramirez that trial would start the following day.

After the jury convicted Ramirez, the trial court ordered a pre-sentencing investigation report. Ramirez's report included, among other things, his criminal history, which reflected that he had never been convicted but had been arrested for the following charges: (1) trespass on January 20, 2015, which was dismissed the same day; (2) grand theft third degree on August 15, 2015, which was dismissed on September 21, 2015, because the State declined to prosecute; (3) aggravated assault on August 15, 2015,

5

which was also dismissed on September 21, 2015, because the State declined to prosecute; (4) burglary tools/possession on August 15, 2015, which was dropped on September 21, 2015; and (5) battery on January 3, 2023, which the State declined to prosecute on January 30, 2023. The report did not set forth any details about these arrests. Further, the sentencing guidelines scoresheet reflected that Ramirez faced a non-state prison sanction and up to a maximum of ten years in state prison. The report also indicated that the probation officer met with Ramirez, and during the meeting, Ramirez was open about his past mistakes that led to his current arrest, and that Ramirez believed it was "a one-time mistake." The probation officer recommended that Ramirez be sentenced to three years of reporting probation, with the special condition of completing an anti-theft course and 200 hours of community service.

At the sentencing hearing, the State informed the trial court that the guidelines were non-state prison to ten years in state prison, and that it agreed with the sentence recommended in the report, which was a withhold of adjudication, three years of reporting probation, 200 hours of community service, and an anti-theft course. The State thereafter asserted it was seeking an adjudication and further explained that it was originally asking for some type of jail incarceration followed by probation, but the State believed

6

that the 200 hours of community control in lieu of a jail sentence was fine.

The defense requested that Ramirez be sentenced to a withhold of adjudication and three years of reporting probation. The defense explained, among other things, that prior to trial, Ramirez was willing to accept a plea as to the burglary charge and the petit theft charge involving the water pump, but Ramirez asserted that he did not take the fuse box in the other charged burglary. The State, however, later dismissed the charge of burglary of an unoccupied structure. Defense counsel argued, "They certainly dismissed it for reasons, Judge. I would say that this was not – this incident was, I believe a one-off mistake." Defense counsel further argued, "This was not a targeted crime. I would argue this was not a violent crime. . . . As his statements show in the reports, you know, he has remorse for his one-time mistake. He's taken responsibility for taking the water pump. . . ." At the time of sentencing, Ramirez had already spent 150 days in jail.

The trial court stated the evidence showed that Ramirez went to the property twice. The second time was in the middle of the night with a mask-like cover so he would not be detected, which indicated to the trial court that Ramirez cased the property and knew what he was doing. Further, the trial court stated that it considered an unoccupied burglary a very serious offense because it violated someone's feeling of security. Next, the trial court stated:

THE COURT: . . . . I also have at my disposal priors of the Defendant which show this is not a one-off as the Defense attorney said. I think even when evaluating a sentence, even if someone hasn't been convicted, this Court has the right to look at the prior charges and to look at the facts and the allegations.

Mr. Ramirez, in F1517271B was charged with aggravated assault with a deadly weapon, and grand theft third degree. It was ultimately nolle prossed. I think he may have entered into the PTI [pre-trial intervention] program.

THE STATE: PTI, yes.

THE COURT: So he accepted responsibility. It wasn't a nolle prose [sic] because they couldn't prove it. And when you read the arrest affidavit, it says, "I was dispatched to 3030 Southwest 8th Street, the Home Depot, reference a theft."

[The trial court read the details of the arrest from the arrest affidavit].

And that was the case he took PTI on. So definitely, not a one-off for him stealing and/or burglarizing.

The reason why I think the [aggravated] assault was charged has to do with the police. He's accused of swerving the vehicle towards the Home Depot person. I'm less concerned about that.

I'm more [sic] about the theft with regard to this not being a one-off or just a mistake, or a person who is, you know, not familiar with the criminal system.

And then in January 2023, there was a misdemeanor battery against him, same person, same date of birth. [The trial court then read from the arrest affidavit.]

I don't know if the State can tell me what the result was of this case.

8

THE STATE: The battery, Judge?

THE COURT: The misdemeanor battery from 2023.

THE STATE: It was dismissed, Judge.

THE COURT: It was dismissed.

DEFENSE COUNSEL: And I can –

THE COURT: So that case was never proven. That was not a PTI acceptance, correct?

DEFENSE COUNSEL: And if I could tell the Court that –

THE COURT: Just one more second. I'll give you an opportunity.

DEFENSE COUNSEL: Yes, Judge.

THE COURT: I just want to make sure what else, if anything, I have. And then there was also another case of a trespass after warning, M1438742. That was dismissed.

THE STATE: That was dismissed as well. Yes, Judge.

. . . .

THE COURT: I'm only mentioning all of this because I think the way it's been presented to the Court is if the Defendant was given a withhold, had never been in trouble his entire life, this was just a one-off mistake. And I'm just letting you know that that's not how I have perceived this defendant, and that's not what I heard in this case.

I heard a sophisticated burglary. I didn't hear someone bumbling and unclear of what they were doing. They went twice. And then that's kind of is consistent with what I'm reading here.

. . . .

9

DEFENSE COUNSEL: . . . . I certainly understand the Court's position that he had prior contacts with the court system but, you know, they were dismissed. They were dismissed for certain reasons or another, but he's never been convicted before.

And I think throughout the life of this case, he had been asked to plead guilty to things that he did not do which is again a problem in this entire system. . . . It's not limited to Miami-Dade or this courtroom. That is a problem.

. . . .

THE COURT: . . . . And so, my sentence is just going to reflect what I think the appropriate sentence is for those, you know, for those actions on your part. . . .

The trial court then adjudicated Ramirez guilty of burglary of an unoccupied conveyance, attempted burglary of an unoccupied conveyance, and petit theft of a boat water pump. The court sentenced Ramirez to 364 days in county jail with credit for time served, followed by three years of reporting probation with early termination after eighteen months. The trial court stated that it was not imposing community service hours. Ramirez's defense counsel did not object to the sentence. Ramirez's timely appeal followed.

## Analysis

Ramirez contends the trial court's consideration of his past arrests and dismissed charges prior to imposing sentence amounted to a denial of his due process and constituted fundamental error. The record supports

10

Ramirez's argument.[2]

"In most cases, a fundamental sentencing error will be one that affects

the determination of the length of the sentence such that the interests of

justice will not be served if the error remains uncorrected." Maddox v. State,

760 So. 2d 89, 100 (Fla. 2000). "Fundamental error occurs where a trial court

---

[2] Florida Rule of Appellate Procedure 9.140(e) provides: "**Sentencing Errors.** A sentencing error may not be raised on appeal unless the alleged error has first been brought to the attention of the lower tribunal: (1) at the time of sentencing; or (2) by motion pursuant to Florida Rule of Criminal Procedure 3.800(b)." As such, if the claimed error raised on appeal by Ramirez was a "sentencing error," the appeal would not be properly before this Court because Ramirez did not bring the claimed error to the trial court's attention at the time of sentencing or by a rule 3.800(b) motion. Although Ramirez's counsel discussed with the trial court prior to sentencing that Ramirez had prior contacts with the criminal court system and that those prior cases were dismissed, when the trial court imposed the sentence, Ramirez's counsel did not bring to the trial court's attention the specific sentencing claim he now raises on appeal.

Here, the claimed error does not constitute a "sentencing error," and therefore, rule 9.140(e) is not applicable. See Jackson v. State, 983 So. 2d 562, 572 (Fla. 2008) ("We have never held that any error that happens to occur in the sentencing context constitutes a 'sentencing error' under [Rule 9.140(e)]. Instead, errors we have recognized as 'sentencing errors' are those apparent in orders entered as a result of the sentencing process." (emphases in original)); Ventura v. State, 414 So. 3d 336, 339-40 (Fla. 3d DCA 2025) (noting that the claimed error – the trial court's erroneous belief that it was legislatively divested of the discretion to impose anything but a life sentence – was not a "sentencing error" because it could not "be discerned from the four corners of the sentencing order" and was not "an error which inheres in the sentence itself"). The claimed error is not apparent from examining Ramirez's sentencing order itself. As such, the claimed error is not a "sentencing error," and Ramirez's appeal is properly before this Court.

considers constitutionally impermissible factors when imposing a sentence." Yisrael v. State, 65 So. 3d 1177, 1177 (Fla. 1st DCA 2011). "Although it is permissible for the trial court to consider the circumstances surrounding the primary offense and the defendant's prior record, consideration of subsequent misconduct or pending or dismissed charges is constitutionally impermissible and violates a defendant's due process rights." Nichols v. State, 283 So. 3d 947, 950 (Fla. 2d DCA 2019) (internal citations omitted); see Yisrael, 65 So. 3d at 1178 (stating that a defendant's due process rights are violated if, during sentencing, the trial court considers a pending or dismissed charge). The burden is on the State to show that the trial court's sentencing decision was not influenced by an impermissible sentencing factor. See Randolph v. State, 355 So. 3d 442, 450 (Fla. 4th DCA 2023) ("Ordinarily, when the trial court allegedly relies on improper sentencing considerations, the State must demonstrate that the trial court's sentencing decision was not so influenced." (quoting Turner v. State, 261 So. 3d 729, 734 (Fla. 2d DCA 2018))).

The focus is on the trial court's statements made during sentencing and whether the statements reflect that the trial court improperly considered dismissed charges in determining the appropriate sentence. For example, in Yisrael, the trial court asked Yisrael about a pending sexual battery charge

12

and a dismissed sexual battery charge because, according to the prosecution, the victim would not testify. Yisrael, 65 So. 3d at 1178. The trial court asked Yisrael, "Okay. Well, what do you have to say about yourself, about these other children too that didn't want to testify against you, are they just lying or something?" Id. In response, Yisrael stated that the children "will lie for whatever reasons, disciplinary actions or whatever." Id. Thereafter, the trial court asked Yisrael if he had raped the other children, and Yisrael stated that he did not. Id. Shortly thereafter, prior to sentencing Yisrael, the trial court stated: "There [are] other victims apparently that don't want to testify. So the Court is going to sentence you to 30 years' Florida State Prison with mandatory court costs." Id.

The First District reversed Yisrael's thirty-year sentence and remanded for resentencing before a different judge. In doing so, the First District concluded that the trial court's statements "strongly indicate that the dismissed and pending charges were a factor in the court's determination to impose the maximum allowable sentence," and it was "not convinced that the trial court would have imposed the same sentence absent consideration of these impermissible factors." Id.

In contrast, in Serrano v. State, 279 So. 3d 296 (Fla. 1st DCA 2019), the First District, distinguishing Yisrael, rejected Serrano's argument that

13

comments made by the trial court when resentencing Serrano for murder committed as a juvenile violated his due process rights and constituted fundamental error. Id. at 304-05. In making this argument, Serrano relied on the following statements made by the trial court regarding dismissed charges:

> He doesn't have a significant criminal history, but he has some.
>
> I read—no one mentioned—it's part of the record that the state dropped numerous other cases given the sentence of the Court. Had the Court had a different sentence or had the State understood the importance of other convictions in our statutory now [sic] scheme, different decisions may have been made.
>
> I don't know what to make of that other than that there were pending charges that were dropped because of the sentence in this case.

Id. at 305.

In rejecting Serrano's argument, the First District acknowledged the trial court "mentioned the dismissed charges and briefly speculated about why the State may have dropped the charges," but concluded that "the court's follow-up statement—'I don't know what to make of that'—suggests equivocation and nothing more." Id. The First District further noted that the trial court "did not discuss the nature of the charges, the details of the charges, or suggest in any fashion that it was considering them in determining Serrano's sentence." Id.

14

Here, the record reflects the trial court improperly considered Ramirez's dismissed charges when sentencing him. The trial court referred to the details of the dismissed charges, which were not in the presentencing investigation report, to show that the offenses Ramirez was convicted of were not a "one-off mistake." Therefore, we reverse Ramirez's sentence and remanded for resentencing before a different judge. See Mirutil v. State, 30 So. 3d 588, 591 (Fla. 3d DCA 2010); Kenner v. State, 208 So. 3d 271, 278 (Fla. 5th DCA 2016).

Reversed and remanded.